Rosemary M. Rivas (State Bar No. 209147)
rrivas@finkelsteinthompson.com
Mark Punzalan (State Bar No. 247599)
mpunzalan@finkelsteinthompson.com
**FINKELSTEIN THOMPSON LLP**
100 Bush Street, Suite 1450
San Francisco, CA 94104
Telephone: (415) 398-8700
Facsimile: (415) 398-8704

[Additional Counsel Listed on Signature Page]

Counsel for Plaintiff Alex McQuown

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX McQUOWN, on behalf of himself and all others similarly situated, | **CLASS ACTION COMPLAINT** |
| Plaintiff, | |
| v. | **DEMAND FOR JURY TRIAL** |
| ELECTRONIC ARTS, INC. | |
| Defendant. | |

Plaintiff, Alex McQuown ("Plaintiff"), on behalf of himself and all others similarly situated, alleges the following against the above-captioned Defendant:

## PARTIES

1. Plaintiff Alex McQuown is an individual residing in Redlands, California. Plaintiff bought a game called, *Spore Creature Creator* developed, marketed and distributed by Defendant.. Plaintiff has been injured as a result of the unlawful conduct alleged herein.

2. Defendant Electronic Arts, Inc. ("EA" or "Defendant") develops, markets and distributes video game software in North America, Europe, and Asia. EA's principal place of business is 209 Redwood Shores Parkway, Redwood City, CA 94065

## NATURE OF ACTION

3. In September 2008, Plaintiff bought EA's *Spore Creature Creator* (hereinafter, "*Spore*"). EA failed to disclose that Spore came with an anti-piracy program called SecuROM that causes problems to computers when it is installed.

4. When Plaintiff installed his EA game to his computer, he also unknowingly installed the SecuROM program. SecuROM cannot be removed by a simple "uninstall" of the program.

5. The SecuROM on Plaintiff's computer has caused a number of problems, including a damaged CD drive, a damaged graphics card, and the disabling of various programs.

6. Plaintiff is not alone in his experience. Numerous other people who purchased *Spore* and other EA games with SecuROM have experienced a wide range of problems after installing these games. In addition to the problems Plaintiff experienced, users have complained the SecuROM has, among other things, prevented many unrelated programs from running properly, led to a slower response time in computers, or has caused computers to crash altogether.

7. EA knew that SecuROM causes computer problems yet included the program with dozens of its video and computer games without making adequate disclosures to consumers. Moreover, SecuROM has not been effective in preventing privacy, and, thus, EA has needlessly caused its customers time, money, and frustration by having to repair various computer problems.

8. Defendant's actions have caused injury and lost money or property in an ascertainable amount to Plaintiff and the proposed Class (as defined in paragraph 34 below), who hereby seek compensatory damages and other relief the Court deems just.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship from the Defendant; there are more than 100 Class members nationwide; and the aggregate amount in controversy exceeds $5,000,000. This court has personal jurisdiction over the parties because Defendant conducts substantial business in this state, has had systematic and continuous contacts with this state, and has agents and representatives that can be found in this state.

10. Venue is proper in this District under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the claims occurred within this District, and Defendant has caused harm to Class members residing within this District.

## FACTUAL ALLEGATIONS

### Background of SecuROM

11. EA is a developer, publisher, and distributor of interactive software worldwide for video game systems, personal computers, cellular handsets and the Internet. In 2008, EA had more than thirty titles of video and computer games that sold more than 4 million copies worldwide.

12. SecuROM is a Digital Rights Management (DRM) program manufactured by Sony used to protect computer games from illegal copying and downloading. EA first included SecuROM with its games in 2007 and has expanded the use of SecuROM to thirty-three games. These games include *Spore, Command & Conquer: Red Alert 3, Crysis Warhead, Dead Space*, and *Mass Effect*.

13. SecuROM is automatically included in a number of EA computer games. That is, once a user installs his/her EA game on to a computer, SecuROM is also installed to a computer's hard drive without the user's consent.

14. EA uses SecuROM to combat piracy of its video games through a complicated and burdensome authentication process. The program registers and re-authenticates the game with EA every ten days or so through the Internet. Users without an Internet connection are unable to install and play these games.

15. SecuROM attempts to prevent piracy by preventing a user from installing the game on more than a few computers, generally around three computers. If a user needs to install the game on additional computers, the user must receive a new code from EA. A user who buys more additional computers in the future must request new authentication codes from EA to continue playing the game.

16. It is entirely within EA's discretion, however, whether to issue a new code, and EA will often not issue new codes. These authentication restrictions and limits on installation effectively prevent consumers from having full use of the game they purchased.

17. SecuROM works by installing itself to the hard drive of the user's computer. The program then disables the user's right to act as administrator for his/her own computer.

18. Generally, computer software is installed into one of three levels (or rings) of a computer's operating system. Ring 3 offers the least access and control over a system. Ring 0 (also called the Kernel) grants the most access and control. Most types of software are installed into Ring 3. SecuROM embeds itself, however, into Ring 0, giving it access and control over the entire computer. In effect, this Kernel access prevents the user from being able to delete any SecuROM-related files.

19. Once a user identifies SecuROM on his computer and wants to delete the program, the program cannot be removed unless the user undergoes a drastic reformat of the hard drive. Additionally, because SecuROM is deeply embedded in the computer's hard drive, the software's components remain hidden so that a computer's task manager (*e.g., Microsoft Windows Process Explorer*) cannot locate the program.

20. Although EA put SecuROM in its games to prevent piracy, SecuROM has been ineffective in preventing the illegal downloading of EA games. To the contrary, piracy of some SecuROM games has risen sharply. For instance, just three weeks after EA released *Spore* in September 2008, the game had been illegally downloaded over 500,000 times on a popular peer-to-peer file sharing protocol. Indeed, SecuROM has done little to prevent piracy and, instead, has led to many frustrated game owners who now face a host of computer problems.

4
CLASS ACTION COMPLAINT

**Computer Problems with SecuROM**

21. Many customers have complained about problems that SecuROM has caused to their computers. These problems run the gamut from simple error messages to completely damaged hardware.

22. Customers have flooded Internet message boards on gaming Web sites with complaints that SecuROM has damaged their computers' hardware and functionality.

23. Many users have complained that SecuROM has damaged or disabled their computers' CD and/or DVD drive. Once the users installed SecuROM games, their CD and DVD drives have malfunctioned. Not only can their drives no longer copy DVDs and CDs, but many users have lost the ability to even watch DVD's on their PC.

24. SecuROM also prevents some computer programs from operating. For instance, users have complained that SecuROM prevents important anti-virus software such as *Norton Anti-virus* from working properly. In particular, Microsoft task manager programs such as Process Explorer have stopped working on users' computers.

25. Additionally, programs for legal copying (or "burning") of CDs and DVDs, such as *Nero Burning ROM*, have also stopped working as a result of SecuROM. Users have complained that other types of software, including programs for forensic analysis and photography, have stopped working because of SecuROM.

26. Many users have also complained that SecuROM has caused their computers and hard drives to have a slower response time in performing regular functions. In some instances, computers have crashed altogether. Many users have had to completely reformat their computers and reinstall all other applications in an attempt to remove SecuROM.

27. Despite SecuROM's potential for computer damage, EA fails to disclose the presence of SecuROM to consumers or the specific problems the program creates. The Electronic Arts Software End User License Agreement ("License Agreement") merely states:

> **Technical Protection Measures**. Our Software uses access control and copy protection technology. An internet connection is required to authenticate the Software and verify your license. If you are not connected to the Internet, you will not be able to use the Software until you reestablish an internet connection and verify the license. The first end user of this License can install and authenticate the Software on a set number of machines which may vary by product. If the Software permits access to additional online features, only one copy of the Software may access those features at one time. Additional terms and registration may be required to access online services and to download Software

updates and patches. Only licensed software can be used to access online services, and download updates and patches. If you disable or otherwise tamper with the technical protection measures, the Software will not function properly.

28. Although the License Agreement vaguely mentions "copy protection technology," it makes no disclosure that SecuROM will be included with the game. The License Agreement also does not mention specifically that this copy protection technology is a separate DRM program that will be installed on to the user's computer, that this program cannot be removed, or that the user may encounter software and hardware issues on their computer.

### Plaintiff's Experience

29. Plaintiff bought EA's *Spore Creature Creator* video game in September 2008. To install the game on to his computer, Plaintiff was required to agree to the terms of the aforementioned License Agreement. The License Agreement appeared on his screen during the installation process, and he could not continue the installation without agreeing to the terms.

30. The License Agreement gave no indication that SecuROM would be installed on the computer. At no point did EA disclose to Plaintiff that SecuROM would be automatically installed with *Spore*. EA also failed to disclose to Plaintiff that SecuROM would install itself to his computer's operating system, and this would control his computer's administrative functions. EA also failed to disclose to Plaintiff that SecuROM could potentially cause a number of hardware issues.

31. Plaintiff installed his game and also unknowingly installed SecuROM. Almost immediately, Plaintiff experienced a number of issues with both his hardware and software from the installation of SecuROM. Once Plaintiff installed *Spore*, Plaintiff's CD and DVD burner began to malfunction and would no longer operate. Because SecuROM disables software used to burn CD's and DVD's, the program disabled Plaintiff's CD and DVD burner. Plaintiff was forced to spend time and money in attempting to repair his hardware.

32. SecuROM also damaged the function of programs on his personal computer ("PC"). After installing *Spore*, Process Explorer, a Microsoft Windows program used to debug software or track system problems, would no longer operate. Process Explorer is often used by users to track down problems on the computer by doing a scan of all computer processes. SecuROM,

however, disabled the Process Explorer program, and Plaintiff was no longer able to perform a scan of his computer to check for problems.

33. Defendant did not inform Plaintiff and the Class either on the product packaging or in the License Agreement that *Spore* and other computer video game software would install an invasive program that could not be removed. As a result of Defendant's conduct, Plaintiff and the Class members will incur a number of problems on their computer and will have to spend countless hours and money to repair the damage to their computer.

## CLASS ACTION ALLEGATIONS

34. Plaintiff brings this suit as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and all other similarly situated persons. The Class is initially defined as follows:

> **All persons or entities in the United States that have purchased an Electronic Arts computer game with SecuROM.**

35. <u>Numerosity</u>. The proposed Class is sufficiently numerous, as EA has sold millions of computer games with SecuROM. The members of the Class are so numerous and dispersed throughout the United States that joinder of all members is impracticable. The Class members can be identified by registration or other records maintained by EA.

36. <u>Common Questions of Fact and Law</u>. Common questions of fact and law exist as to all members of the Class and predominate over any questions affecting solely individual members of the Classes, pursuant to Rule 23(b)(3). Among the questions of fact and law that predominate over any individual issues are:

    a. Whether EA sold its video computer games with the SecuROM program;

    b. Whether EA failed to disclose and/or inadequately disclose material information to consumers, namely, that its video computer games came with SecuROM that would cause problems to computers after installation;

    c. Whether EA's conduct violated Cal. Civ. Code §§ 1750, *et seq.* ("CLRA");

    d. Whether EA's conduct violated Cal. Bus. and Prof. Code §§ 17200, *et seq.* ("UCL");

    e. Whether Plaintiff and the members of the Class sustained damage and ascertainable loss as a result of Defendant's conduct as alleged herein; and

  f. The amount of attorneys' fees, prejudgment interest, and costs of suit to which the Classes are entitled.

37. <u>Typicality</u>. Plaintiff's claims are typical of the claims of Class members because Plaintiff and the Class sustained damages arising out of the Defendant's wrongful conduct as detailed herein. Specifically, Plaintiff and Class members' claims arise from the Defendant's secret and invasive installation of SecuROM onto computers.

38. <u>Adequacy</u>. Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel competent and experienced in class action lawsuits. Plaintiff has no interests antagonistic to or in conflict with those of Class members and therefore should be adequate as representatives for the Class.

39. <u>Superiority</u>. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the members of the Class is impracticable. Furthermore, the adjudication of this controversy through a class action will avoid the possibility inconsistent and potentially conflicting adjudication of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

## CAUSES OF ACTION

## COUNT I

**Violation of the Consumers Legal Remedies Act,**

**Cal. Civ. Code §§ 1750 *et seq.***

40. Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein.

41. Defendant is a "person" within the meaning of Civil Code sections 1761(c) and 1770, and provides "goods" within the meaning of Civil Code sections 1761(a) and 1770.

42. Defendant's customers, including Plaintiff and Class members, are "consumers" within the meaning of Civil Code sections 1761(d) and 1770. Each purchase of an EA game with SecuROM by Plaintiff and each Class member constitutes a "transaction" within the meaning of Civil Code sections 1761(e) and 1770.

43. As set forth herein, Defendant's acts, practices, representations, omissions and course of conduct, namely, its failure to disclose the existence of SecuROM on its games, violates

sections 1770(a)(5), (a)(7), and (a)(9) of the Consumers Legal Remedies Act in that: (a) Defendant represented that goods or services had characteristics, uses, benefits or quantities which they do not have; (b) Defendant represented that goods or services were of a particular standard, quality or grade when they were another; and (c) Defendant advertised goods with intent not to sell them as advertised. Plaintiff and the Class relied on Defendant's representations.

44.     Pursuant to the provisions of Civil Code section 1780, Class members are entitled to injunctive relief in the form of a new video game without SecuROM. Plaintiff, on behalf of himself and all Class members, will comply with the preliminary notice provision of California Civil Code § 1782(a). If Defendant does not provide Plaintiff's requested injunctive relief thirty days after the commencement of this action, Plaintiff will amend his complaint and include a request for damages in accordance with California Civil Code § 1782(d).

## COUNT II

### Violation of the Unfair Competition Law,

### Cal. Bus. & Prof. Code §§ 17200 *et seq.*

45.     Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein.

46.     The acts and practices engaged in by Defendant, and described herein, constitute unlawful, unfair, and/or fraudulent business practices in that: (a) Defendant's practices, as described herein, violate the California Consumers Legal Remedies Act, Cal. Civ. Code sections 1750, *et seq.*; (b) the justification for Defendant's conduct is outweighed by the gravity of the consequences to Plaintiff and Class members; (c) Defendant's conduct is immoral, unethical, oppressive, unscrupulous or substantially injurious to Plaintiff and Class members; and/or (d) the conduct of Defendant constitutes fraudulent, untrue or misleading actions in that such conduct has a tendency to deceive a reasonable person, including Plaintiff and Class members. Such conduct violates California Business & Professions Code sections 17200, *et seq.*

47.     Plaintiff and all other Class members have suffered injury in fact and have lost money and/or property as a result of Defendant's unfair competition, as more fully set forth herein.

48. Defendant's unlawful, unfair, and fraudulent business practices include, but are not limited to, failing to disclose to Plaintiff and the Class that its video games included an invasive and damaging program called SecuROM.

49. Plaintiff and the Class relied on Defendant's representations which were contained in the aforementioned License Agreement.

50. Pursuant to California Business & Professions Code section 17203, Plaintiff and Class members are therefore entitled to equitable relief, including restitution of all monies paid to Defendant for the profits gained by the sale of EA games with SecuROM, disgorgement of all profits accruing to Defendant because of its unlawful, unfair and fraudulent business practices, a permanent injunction enjoining Defendant from its unlawful, unfair, and fraudulent business activities, and appropriate declaratory relief as described herein.

## COUNT III

### Trespass to Personal Property/Chattels

51. Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein.

52. At all relevant times, Plaintiff and the Class were the owners of computers that were interfered with and damaged by Defendant's SecuROM program.

53. At all relevant times, Defendant and/or its agents intentionally and without consent, interfered with Plaintiff and the Class' use of their computers by installing SecuROM. The SecuROM, among other things, diminishes computer functions, disrupts other software on the computer and causes computers to slow down, depletes the computer's memory and processing power, reduces a user's productivity, places a tremendous burden on computer equipment, demands disk space and drain's processing power, and diminishes the value of the computer.

54. In doing so, Defendant intentionally intermeddled with, damaged, and deprived Plaintiff and the Class of their computers, or a portion thereof.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment on behalf of himself and the Class as follows:

A. For an order certifying the proposed Class alleged herein under Federal Rule of Civil Procedure 23(a) and (b)(3) and appointing Plaintiff and Plaintiff's counsel of record to represent said Class;

B. For an order awarding the proposed equitable relief requested herein;

C. For an order awarding Plaintiff and Class members compensatory damages against Defendant in an amount to be determined at trial, together with prejudgment interest at the maximum rate allowable by law; and

D. Awarding the Plaintiff and the Class members the reasonable costs and expenses of suit, including attorneys' fees, and filing fees.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury.

Dated: November 26, 2008

Respectfully submitted,

**FINKELSTEIN THOMPSON LLP**

/s/ Mark Punzalan
Mark Punzalan

Rosemary M. Rivas
100 Bush St., Suite 1450
San Francisco, California 94104
Telephone: (415) 398-8700
Facsimile: (415) 398-8704

-and-

Mila F. Bartos
**FINKELSTEIN THOMPSON LLP**
The Duval Foundry
1050 30th Street, NW
Washington, D.C. 20007
Telephone: (202) 337-8000
Facsimile: (202) 337-8090

## AFFIDAVIT OF MARK PUNZALAN

I, Mark Punzalan, declare as follows:

1. I am an associate with the law firm Finkelstein Thompson LLP, counsel for Plaintiff Alex McQuown in this action. I am admitted to practice law in California and before this Court, and am a member in good standing of the State Bar of California. This declaration is made pursuant to California Civil Code section 1780(c). I make this declaration based on my research of public records and also upon personal knowledge and, if called upon to do so, could and would testify competently thereto.

2. Defendant's principal place of business is within this District, as alleged in the accompanying Class Action Complaint.

I declare under penalty of perjury under the laws of the United States on this 26th day of November 2008, in San Francisco, California that the foregoing is true and correct.

_/s/ Mark Punzalan_
Mark Punzalan

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California
County of San Francisco

On Nov 26, 2008 before me, Andrew F. Albright, Notary Public,
      Date                           Here Insert Name and Title of the Officer

personally appeared Mark Punzalan
                           Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
                         Signature of Notary Public

[Notary Seal: ANDREW F. ALBRIGHT, COMM. #1788733, NOTARY PUBLIC-CALIFORNIA, SAN FRANCISCO COUNTY, My Comm. Expires Feb. 7, 2012]

Place Notary Seal Above

---- OPTIONAL ----

Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.

**Description of Attached Document**

Title or Type of Document: Affidavit

Document Date: —   Number of Pages: One-1

Signer(s) Other Than Named Above: —

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
☒ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here
on file

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

©2007 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.NationalNotary.org   Item #5907   Reorder: Call Toll-Free 1-800-876-6827